IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARBARA A. SHEPPARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1:07-cv-461-MEF |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 17, filed November 14, 2007). Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42. U.S.C. §§ 1381, *et seq.*, Barbara A. Sheppard ("Sheppard" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained, the Commissioner's decision should be affirmed.

## I. NATURE OF THE CASE

Sheppard requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and supplemental security income. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999), (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis*, 125 F.3d at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid.

*Id*.; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. BACKGROUND AND PROCEEDINGS

Sheppard claims disability because of pain in her back, knees, ankles, eyes, headaches, shortness of breath, and poor memory. (Tr. 69-75). Following initial administrative denial of her claim, Sheppard requested a hearing before an administrative law judge ("ALJ") (Tr. 39-40). ALJ David R. Murchison convened an evidentiary hearing on July 26, 2005. (Tr. 386-416). Sheppard was represented by an attorney, Deborah Siegel. ALJ Murchison received direct testimony from Sheppard and a vocational expert, Sue Berthaum. The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments completed by medical consultants who reviewed Sheppard's medical records upon request of Alabama Disability Determination Services.[1] ALJ Murchison rendered an unfavorable verdict on October 26, 2005. (Tr. 257-69). Sheppard requested a review of the decision by the Appeals Council which remanded the case on March 13, 2006.

On September 22, 2006, ALJ Murchison convened a second evidentiary hearing. (Tr. 417-44). Sheppard was again represented by Deborah Siegel and Richard Freeman testified as the vocational expert. ALJ Murchison rendered a second unfavorable decision on September 22, 2006. (Tr. 10-24). On March 27, 2007, the Appeals Council denied

---

[1] Amy M. Prisoc (Tr. 140-147) and Kenneth Warren, Ph.D. (Tr. 160-164). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005).

Sheppard's request for review. (Tr. 6-8). This Social Security Appeal was filed on May 23, 2007. *See* Doc. 1, Complaint.

## IV. ADMINISTRATIVE DECISION

### A.   Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). When a claimant is found disabled – or not – at an early step, remaining steps are not considered. *Id.* This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Phillips*, 357 F.3d at 1237-39. As such, the claimant bears the burden of proof for the following:

(1)   Whether she is currently performing a substantial gainful activity;

(2)   Whether she has a severe impairment;

(3)   Whether that severe impairment meets or exceeds an impairment in the listings; and

(4)   Whether she can perform her past relevant work.

*Phillips*, 357 F.3d at 1237-1239. A *prima facie* case of qualifying disability exists when a

claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite her impairments, and is based on all relevant medical and other evidence. *Id.* Morever, it can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[2] ("grids") or call a vocational expert. *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.* Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id.* In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question

---

[2] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## B.  Findings and Conclusions

Employing the five step process, ALJ Murchison found that Sheppard has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2)[3]; the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Sheppard is unable to perform any of her past relevant work (Step 4). (Tr. 15). As such, Sheppard presents a *prima facie* case. Thus, ALJ Murchison analyzed whether Sheppard's impairments prevent her from performing work in the national economy taking into account her RFC and vocational factors.

At Steps Four and Five, ALJ Murchison states he evaluated Sheppard's RFC and also received testimony from a vocational expert regarding Sheppard's ability to perform work available in the national economy (Tr. 23). Upon consideration of the record, including the vocational expert's testimony, ALJ Murchison determined Sheppard retains the RFC to perform work available in the national economy for jobs in the sedentary to light exertional work category. (Tr. 23). Consequently, the ALJ found Sheppard has not been disabled since the alleged onset date. (Tr. 24).

---

[3]  ALJ Murchison found the following "severe" impairments: chronic pulmonary disease, emphysema, borderline intellectual functioning, fibromyalgia, Gerd, migraine headaches, degenerative joint disease, and major depressive order. (Tr. 14).

## V. ISSUES

Sheppard raises three issues on appeal:

(1) Whether the ALJ should have found that Sheppard met the listing at 3.02(A);

(2) Whether the ALJ erred in finding that Sheppard did not equal listing 14.09(D); and

(3) Whether the ALJ's decision is supported by substantial evidence.

Pl. Br. at p. 1.[4]  For the third issue, Sheppard addresses two sub-issues.  First, whether the ALJ erred when relying upon the opinion of a neurologist with regard to Sheppard's fibromyalgia and second, whether the ALJ erred in his finding that Sheppard's testimony was not credible.  *Id.*

The Commissioner recharacterizes the three issues as two issues - "whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole." Def. Br. at p. 18.  The Commissioner also restates the issues as similarly worded by Sheppard: "(1) whether the ALJ properly evaluated Plaintiff's impairments, (2) whether the ALJ properly evaluated Plaintiff's credibility, (3) whether the ALJ properly considered the medical opinions of the record, and (4) whether the ALJ properly found a significant number of jobs existed in the national economy that Plaintiff

---

[4] Plaintiff's brief is numbered starting with page 1 on the Statement of the Issues.  Prior to the Statement of Issues are several introductory pages including a cover page, table of contents, and table of authority.  Therefore, the numbering of Sheppard's brief does not align with the number of pages (as illustrated by the scanned PDF document) on PACER.  Thus, when citing to the brief, the Court uses the numbering used by Plaintiff in her brief.

could perform." *Id.* at 18-19. Regardless, the Commissioner does specifically address the issues raised by Plaintiff.

The Court characterizes the issues as follows:

(1)  Whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law; and

(2)  Whether the ALJ's decision is supported by substantial evidence.

### VI. DISCUSSION AND ANALYSIS

**A.  Whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law**

Sheppard asserts two errors relating to Step 3 of the sequential evaluation process. Pl. Br. at 1, 8-10. First, Sheppard avers ALJ Murchison erred when he determined she did not meet the requirements for Listing § 3.02(A). *Id.* at 1, 8-9. To meet the severity required by Listing § 3.02(A), a claimant must have a pulmonary function test with a Forced Expiratory Volume ($FEV_1$) equal to or less than 1.35 liters.[5] The $FEV_1$ value represents the largest of at least three satisfactory forced expiratory maneuvers. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00(E). In other words, even if there is a trial that falls below the listing level, the largest value is used for the purposes of determining whether a claimant meets the listing. *Id.*

The first pulmonary function test, which took place on March 25, 2004, indicated

---

[5]  The Listing Table provides the upper limits for each height range. Based on Sheppard's height, the corresponding Table I value would be 1.35 liters. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02.

Sheppard had an $FEV_1$ value of 1.9 liters. (Tr. 217-18). Therefore, it did not meet the equal to or less than 1.35 liters requirement of § 3.02(A).[6] The next pulmonary function test took place on April 7, 2004. (Tr. 215-16). The pre-medication $FEV_1$ results were 0.94, 1.42, and 1.25 liters, and the post-medication $FEV_1$ results were 1.33, 1.28, and 1.33 liters. *Id.* As previously noted, the largest value is used for the purposes of the determination regarding the Listing. The largest value, 1.42, clearly exceeds 1.35 liters, hence, the second pulmonary test does not meet the § 3.02(A) Listing.

The Court analyzes Sheppard's third pulmonary function test separately as it requires a different analysis. The third pulmonary function test, which took place on January 18, 2005, had pre-medication $FEV_1$ results of 1.22, 1.27, and 1.03 liters and post-medication $FEV_1$ results of 1.25, 1.07, and 0.99 liters. (Tr. 348-50). The largest $FEV_1$ value is 1.27 liters which falls below the necessary 1.35 liters. However, as noted by the Commissioner in his brief, the pulmonary function test did not meet the other requirements detailed in the preamble relating to impairments of the respiratory system. *See* § 3.00(E). It states in pertinent part: "[t]wo of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests. A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 L, whichever is greater." *Id.* The third pulmonary function test does not meet these additional

---

[6] The Commissioner also asserts the test did not contain the required three maneuvers and thus the test if not valid for Listing purposes. However, this argument need not be addressed since the 1.9 L value was in excess of 1.35 L.

requirements. First, Sheppard's pre-medication trial includes $FEV_1$ values of 1.27 and 1.03 liters which indicates a variance of 18.9%. (Tr. 349). This clearly is greater than a 5% differential. Her post-medication trial includes $FEV_1$ values of 1.25 and 0.99 liters which indicates a variance of 20.8%. (Tr. 350). Since this pulmonary function test does not meet the requirements of § 3.00(E), it cannot be used in a § 3.02(A) Listing determination. *See* § 3.00(E). Based on the above, the ALJ was not in error when he determined Sheppard did not meet the requirements of Listing § 3.02(A).

Sheppard's fourth and last pulmonary function test took place on June 15, 2006 and has the same problems as the first two tests. (Tr. 373). It indicated pre-medication $FEV_1$ values of 1.82, 1.08, and 1.01 liters and post-medication values of 0.96, 1.43, and 1.55 liters. *Id*. As with the first and second tests (March-April 2004), while some values are less than 1.35 liters, the largest $FEV_1$ values exceed 1.35 liters and thus the fourth pulmonary function test does not meet the requirements for Listing § 3.02(A).

Sheppard argues the ALJ erred when he found she did not meet the requirements for Listing § 14.09(D) which relates to inflammatory arthritis. Pl. Br. at 1, 9-10. Inflammatory arthritis is "inflammation of major joints . . . causing difficulties with ambulation or fine and gross movements, or the arthritis may involve other joints or cause less restriction of ambulation or other movements but be complicated by extra-articular features that cumulatively result in serious functional deficit." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00(B)(6). Listing § 14.09(D) requires a claimant to show inflammatory arthritis with

signs of peripheral joint inflammation on current examination and (1) significant, documented constitutional symptoms and signs and (2) involvement of two or more organs/body systems where at least one of the organs/body systems must be involved to at least a moderate level of severity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09(D). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)) (internal quotations omitted). Sheppard concedes fibromyalgia is not a listed impairment, so she cannot meet the Listing for § 14.09(D). However, she still attempts to analogize it to the inflammatory arthritis listing under § 14.09(D) thereby equaling the Listing. Pl. Br. at 10. "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (quoting 20 C.F.R. § 404.1526(a)) (internal quotations omitted).

Sheppard is unable to show that her fibromyalgia is equal in severity and duration to the listing for inflammatory arthritis. Dr. Soh, her treating rheumatologist, specifically states her "rheumatoid arthritis factor is negative." (Tr. 235). Various examinations by Dr. Soh did indicate tenderness in her joints, but she had no signs of active synovial inflammation. (Tr. 203-04, 230, 232-37, 356-58). While the record does support Sheppard's assertions of tenderness and soreness, she did not exhibit difficulty with ambulation or fine and gross movements. (Tr. 136, 180, 367-68, 396). Consequently, her symptoms did not meet or equal

inflammatory arthritis, nor does she show her fibromyalgia symptoms were complicated by extra-articular features that cumulatively result in serious functional deficit. *See* § 14.00(B)(6).

Finally, Sheppard asserts the ALJ failed to consider whether her combination of impairments equaled a listing.[7] Specifically, she asserts "[h]e should then have been [sic] considered whether with the combination of impairments she equaled a listing." Pl. Br. at 9. Thus, the Court interprets this as an allegation that the ALJ failed to consider her impairments in combination. Sheppard's discussion on this subject is brief, to say the least. Yet, the Commissioner's discussion is essentially nonexistent; however, the Court will still attempt to glean from this minimal discussion and by reviewing the record to determine whether the ALJ properly considered Sheppard's impairment in combination.

ALJ Murchison expressly articulated "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals on of the listed impairments." (Tr. 15). The Eleventh Circuit has determined an ALJ's statement that a claimant's severe impairment, or combination of impairments, do not meet the listings can be taken as evidence that the combined effects of all impairments was considered. *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); (citing *Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986).

---

[7] Sheppard makes this assertion in her section pertaining to § 14.09(D), yet the majority of her remaining statements and analysis strictly pertains to the comparison of her symptoms to inflammatory arthritis. Pl. Br. at 9-10. However, since she does briefly mention this complaint, the Court will address it here.

Consequently, it is clear ALJ Murchison considered Sheppard's impairments in combination and substantial evidence supports his conclusion.

**B.     Whether the ALJ's decision is supported by substantial evidence**

Essentially this issue can be broken down into two subparts.  First, whether the ALJ properly evaluated the medical opinions of the record.  Second, whether the ALJ properly evaluated Sheppard's credibility.  However, the two parts are still intertwined and will be addressed collectively.

To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:

(1)     Evidence of an underlying medical condition; and either

(2)     Objective medical evidence confirming the severity of the alleged pain; or

(3)     That the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

In the case at hand, although ALJ Murchison does not specifically cite or refer to the language of the three-part test in *Holt*, his findings and discussion indicate that the standard was properly applied.  *See Wilson*, 284 F.3d at1225-26 (the ALJ did not cite or refer to the language of the three-part test in *Holt*, but the findings and discussion indicated that the standard was applied).  Further, ALJ Murchison cites to 20 C.F.R. § 404.1529 which "contains the same language regarding subjective pain testimony" that the Eleventh Circuit

interpreted when initially establishing the three-part pain standard. *Id.* at 1226 (citations omitted); *see also* Tr. 22 (for ALJ Murchison's reference to statute and Social Security Ruling 96-7p). Thus, the failure to cite to Eleventh Circuit caselaw is not reversible error so long as the ALJ properly applies the appropriate regulation. Based on the above, ALJ Murchison clearly applied the proper pain standard.

However, "[w]hile both the Regulations and the [Eleventh Circuit] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Furthermore, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson,* 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1532 (11th Cir.1991).

ALJ Murchison specifically articulated "[t]he claimant's allegations regarding the extent of her pain and functional restrictions is [sic] not supported by medical findings, office notes, activities of daily living or other credible factors." (Tr. 22). ALJ Murchison provided a detailed description of Sheppard's medical records . (Tr. 15-21). He affords significant weight to Dr. Allen's assessment that while Sheppard does experience pain from fibromyalgia, it is not severe to the point she would be prohibited from gainful employment.

(Tr. 22). Additionally, ALJ Murchison further notes "none of claimant's treating physicians placed any limitations or restrictions on the claimant's activities that are inconsistent with Dr. Allen's assessment." (Tr. 22). In sum, ALJ Murchison considered Sheppard's symptoms, medical records, vocational expert testimony, and Sheppard's own testimony, and concluded that Sheppard's subjective complaints of the severity of her pain are not supported by medical findings, office notes, activities of daily living or other credible factors. (Tr. 22) Based on the above, this court finds the ALJ made a reasonable decision to reject Sheppard's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so. It is not for this Court to reweigh the evidence, but rather determine whether the ALJ has articulated reasonable reasons for his decision. "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). Applying the pain standard, ALJ Murchison properly considered Sheppard's assessment of her pain level, and determined that it was not credible to the degree alleged because the evidence did not confirm the severity of Sheppard's alleged limitations. Consequently, the third prong of the *Holt* pain standard was not met. *Wilson*, 284 F.3d at 1226. Accordingly, the determination was based on substantial evidence and a correct application of the law.

Ergo, there was substantial evidence for ALJ Murchison to determine Sheppard could not perform past relevant work (Step 4), but could perform several jobs available in the

national economy (Step 5). (Tr. 22-23). Based on a hypothetical including Sheppard's credible impairments, the vocational expert testified Sheppard could perform several jobs in the light to sedentary exertional work category. (Tr. 23). These would include surveillance system monitor, cafeteria attendant, sandwich maker, and assembler.[8] *Id*. Based on this testimony, Sheppard would not meet Step 5 of the five-step, burden-shifting analysis. As such, ALJ Murchison's determination that Sheppard is not disabled within the meaning of the Social Security Act is supported by substantial evidence. Further, the Court finds (1) the Commissioner properly considered Sheppard's pain and non-exertional impairments as required and (2) ALJ Murchison's credibility finding satisfies the requirements of Social Security Ruling 96-7p and other applicable laws and standards.

In addition, Sheppard asserts ALJ Murchison inappropriately relied upon the opinion of a neurologist which contradicted the severity of Sheppard's fibromyalgia as established by the treatment of her treating rheumatologist. *See* Pl. Br. at 1, Issue 3(A). Specifically, Sheppard relies upon an unpublished Eleventh Circuit opinion and says the decision of the ALJ runs afoul of this decision. *See Stewart v. Apfel*, No. 99-6132, 245 F.3d 793, 2000 U.S. App. LEXIS 33214 (11th Cir. Dec. 20, 2000).[9] Sheppard relies upon this unpublished opinion when she asserts ALJ Murchison should not have used the opinion of Dr. Allen, a

---

[8] Surveillance system monitor - 166,000 jobs available in the regional and national economy; cafeteria attendant - 521,000 jobs available in the regional and national economy; sandwich maker - 350,000 jobs available in the regional and national economy; and assembler - 350,000 jobs available in the regional and national economy. (Tr. 23, 438-39

[9] Unpublished decisions of the Eleventh Circuit are not binding precedent. *See* 11th Cir. R. 36-2.

neurologist, to contradict the medical records of her rheumatologist. *See* Pl. Br. at p. 11. However, the Eleventh Circuit has distinguished other fibromyalgia cases from the analysis used in *Stewart*. In *Stewart*, the Eleventh Circuit indicated that it is error to reject a claimant's testimony based on the lack of objective evidence documenting fibromyalgia. *See Moore*, 405 F.3d at 1211 (citing *Stewart*, 2000 U.S. App. LEXIS 33214 at *9, n. 4). This is not the issue in the instant suit. The facts at hand are more analogous to the situation in *Moore* where the Eleventh Circuit determined the ALJ properly relied on the inconsistencies between the claimant's descriptions of her daily activities and her claims of infirmity. *Id.* at 1212. In fact, ALJ Murchison found Sheppard's fibromyalgia to be a severe impairment. (Tr. 14). Since the ALJ provided a detailed factual basis for his credibility determination, which did not turn on the lack of objective evidence documenting fibromyalgia, *Stewart* is unavailing to Sheppard. *Id.* (discussing inapplicability of *Stewart* for this reason).

Thus, the Court turns to the assertion that ALJ Murchison improperly relied upon the opinion of Dr. Allen. Sheppard asserts the opinion of a neurologist cannot be used to contradict the medical records of her rheumatologist.[10] As noted by the Commissioner, contrary to Sheppard's assertion, Dr. Allen's opinion does not contradict the treatment records from Dr. Soh, her treating rheumatologist. Def. Br. at 29. Dr. Soh diagnosed

---

[10] It is interesting to note that according the National Fibromyalgia Research Association while "[m]ost fibromyalgia specialists are rheumatologists or physiatrists (physical medicine rehabilitation specialists), [] you can't assume that any given rheumatologist or physiatrist will be knowledgeable and helpful. Other fibromyalgia specialists may be internists, anesthesiologists, ***neurologists,*** or belong to other specialties." www.nfra.net/fibromyalgia_specialist.php (emphasis added).

Sheppard with fibromyalgia and treated her complaints with medication and steroid injections. (Tr. 203-05, 230-37, 356-57). More importantly, in the medical records, Dr. Soh never expressed the opinion Sheppard's pain was to the point she would be precluded from all gainful work activity. *Id*. In fact, as noted by ALJ Murchison, no treating or examining physician opined that Sheppard is so limited that she would be precluded from gainful work activity at all exertional levels. (Tr. 14). As such, the Court finds no error with the ALJ's reliance on Dr. Allen's opinion.

### V. CONCLUSION

For the aforementioned reasons, the ALJ's decision is supported by substantial evidence and the proper application of the law. Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge to **AFFIRM** the Commissioner's decision.

**IT IS FURTHER ORDERED** that the parties file any objections to the this *Recommendation* on or before **March 31, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 17th of March, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE